**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| WILLENE LOWDERMILK, | No. 06-36085 |
| Plaintiff - Appellee, | D.C. No. CV-06-00592-ALH |
| v. | |
| UNITED STATES BANK NATIONAL ASSOC., | OPINION |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted February 8, 2007
Portland, Oregon

Filed

Before: THOMPSON, KLEINFELD, and BYBEE, Circuit Judges.

Opinion by Judge Bybee

BYBEE, Circuit Judge:

In this case we are called upon to resolve a question of first impression:

Under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4

(2005), when the plaintiff has pled damages *less* than the jurisdictional amount,

what must the defendant prove in order to remove the case to federal court? We reserved this question in *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683 n.8 (9th Cir. 2006) (per curiam). We answer that the party seeking removal must prove with "legal certainty" that the amount in controversy is satisfied, notwithstanding the prayer for relief in the complaint. We conclude that the defendant in this case failed to meet this burden, and we affirm the judgment of the district court.

I

Willene Lowdermilk ("Plaintiff") filed a complaint in Oregon state court on March 28, 2006, on behalf of herself and a class of employees "who worked for U.S. Bank as hourly employees in the past six years." Plaintiff sought relief for two alleged violations of Oregon law. First, she claimed U.S. Bank ("Defendant") denied her full compensation for the hours she worked because Defendant had a policy of rounding actual hours worked down to the nearest tenth of an hour and that this resulted in employees not being compensated for one to five minutes of the time they worked per day. She sought unpaid wages plus penalty wages under OR. REV. STAT. § 653.055. Second, Plaintiff alleged that Defendant failed to promptly pay Plaintiff her wages upon termination, for which she sought damages and penalty wages under OR. REV. STAT. § 652.150. In addition to damages and

2

penalty wages, Plaintiff sought costs, attorneys' fees, and interest, a sum Plaintiff alleged in her prayer for relief was "in total, less than five million dollars." In the jurisdiction section of her complaint, Plaintiff further alleged that "[t]he aggregate total of the claims pled herein do not exceed five million dollars."

On April 26, 2006, Defendant filed a Notice of Removal to federal court under CAFA, *see* 28 U.S.C. §§ 1332, 1441, 1453, and argued that the actual amount in controversy far exceeded CAFA's jurisdictional amount. Plaintiff opposed removal and continued to argue that "the aggregate total of the claims [for unpaid and late wages] pled [in her complaint] does not exceed five million dollars" and, therefore, did not meet CAFA's requirements for federal jurisdiction. *See* 28 U.S.C. § 1332(d).

On August 16, 2006, the district court held that it was bound by the complaint as to the amount in controversy "unless plaintiff's prayer is determined to have been made in bad faith." It held that Defendant had not proved that Plaintiff's allegation was made in bad faith nor had it met its burden of establishing jurisdiction under CAFA. Consequently, the district court remanded

the case to state court. Plaintiff filed a petition for permission to appeal,[1] which we granted on December 22, 2006.

Under CAFA, we have 60 days from the time we accept the appeal to "complete all action on such appeal, including rendering judgment," 28 U.S.C. § 1453(c)(2); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 685-86 (9th Cir. 2005), unless (1) all parties agree to an extension or (2) the extension "is for good cause shown and in the interests of justice." 28 U.S.C. § 1453(c)(3). In the latter case, we may obtain an extension of ten days only. At oral argument, Defendant's counsel agreed to an extension. Plaintiff's counsel, however, refused consent even though she had previously requested and received her own extension of time and a stay was in place in the state court action. On February 20, 2007, we issued an order granting the court, for good cause shown and in the interests of justice, a ten day extension to, and including, March 2, 2007.[2]

---

[1] Defendant filed its petition for permission to appeal August 23, 2006. After the court granted an extension of time, Plaintiff filed her response on September 11, 2006.

[2] If a final judgment is not issued before the statutory deadline, including any extension under 28 U.S.C. § 1453(c)(3)(B), "the appeal shall be denied." 28 U.S.C. § 1453(c)(4).

## II

A civil action in state court may be removed to federal district court if the district court had "original jurisdiction" over the matter. 28 U.S.C. § 1441(a).[3] As amended by CAFA, 28 U.S.C. § 1332(d) vests district courts with "original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d). We recently affirmed that "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam); *see also Serrano v. 180 Connect, Inc.*, — F.3d —, 2007 WL 601984 (9th Cir. Feb. 22, 2007) (holding that the proponent of federal jurisdiction bears the burden of proving jurisdiction). *Accord Morgan v. Gay*, 471 F.3d 469, 472-73 (3d Cir. 2006) (holding that under CAFA, the party seeking removal bears the burden of establishing the requisite amount in controversy); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006) (holding that

---

[3] We review issues pertaining to removal de novo. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005); *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994).

CAFA does not alter the traditional rule that the proponent of federal jurisdiction bears the burden of proving the amount in controversy); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (finding that "none [of CAFA's language] is even arguably relevant" to the question of burden shifting).

A

The questions of minimal diversity and class numerosity are not contested on appeal, and we are satisfied that the evidence supports the district court's decision. With respect to minimal diversity, Defendant is a citizen of Ohio because its main office is located in that state, *Wachovia Bank, N.A. v. Schmidt*, 126 S. Ct. 941, 944-45 (2006), and at least one member of the class is a citizen of Oregon. As to numerosity, Plaintiff asserts in her complaint that the class "exceeds 30 persons" but admits that "[t]his number may increase, depending upon the turnover rate for employees" of U.S. Bank. As we discuss below, there are potentially thousands of former employees of U.S. Bank that are eligible class members. We conclude, as did the district court, that the suit satisfies CAFA's requirements of minimal diversity and numerosity.

B

Whether the amount in controversy is met here is a more difficult question. In her complaint, Plaintiff claimed only damages "in total, less than five million dollars," although she also asked for attorneys' fees, which Oregon law authorizes. *See* OR. REV. STAT. §§ 652.200(2), 653.055(4). Defendant has provided some evidence that the Plaintiff's actual claims necessarily exceed $5,000,000. Additionally, Defendants argue that we should count potential attorneys' fees towards the amount in controversy.

Although Defendant bears the burden of proving that the Plaintiff's suit meets the requirements of 28 U.S.C. § 1332(d), we must consider what level of proof the Defendant must meet. In *Abrego Abrego*, we discussed three different scenarios. First, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." 443 F.3d at 683 (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Second, if the complaint alleges damages in *excess* of the federal amount-in-controversy requirement, then the amount-in-controversy requirement is presumptively satisfied unless "it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum." *Id.* at 683 n.8 (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)). Third, if the complaint alleges damages

*less* than the jurisdictional amount, "'more difficult problems are presented,'" for which we found "no binding precedent in this circuit" and as to which "we reach[ed] no resolution." *Id.* (quoting 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3725, at 84 (1998 & Supp. 2006)).

Defendant argues that this case falls within the first scenario described above, and that because Plaintiff failed to specify her damages, Defendant must prove only by a preponderance of the evidence that the damages claimed exceed $5,000,000. Our starting point is "whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Abrego Abrego*, 443 F.3d at 690 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). We have reserved the preponderance of evidence standard for situations where a plaintiff "seeks no specific amount in damages," *Abrego Abrego*, 443 F.3d at 688 (footnote omitted), and a court is forced to look beyond the complaint to determine whether the suit meets the jurisdictional requirements.[4]

---

[4] In *Abrego Abrego*, for example, the complaint asked only for "pre- and post-judgment interest, attorney's fees and costs, and relief in the form of special, general, punitive, and exemplary damages due and awardable pursuant to the actions of Defendants." 443 F.3d at 688 (internal quotation marks omitted). Because damages were not quantified, we looked beyond the complaint to "consider facts in the removal petition." *Id.* at 690 (quoting *Singer*, 116 F.3d at

(continued...)

Here, we need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met, as Plaintiff avers damages ("less than five million dollars") that do not reach the threshold for federal jurisdiction. We hold that Plaintiff did plead a "specific amount in damages," and therefore, the preponderance of the evidence standard does not apply.

We now turn to the question we reserved in *Abrego Abrego*: What proof must the defendant adduce to contradict the plaintiff's claim that her damages are less than the jurisdictional amount? There are two principles that inform our judgment here. First, as federal courts, we are courts of limited jurisdiction and we will strictly construe our jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); 13 WRIGHT, MILLER & COOPER, at § 3522. Second, it is well established that the plaintiff is "master of her complaint" and can plead to avoid federal jurisdiction. *See, e.g.*, *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987); *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005). Accordingly, subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid

---

[4](...continued)
377).

federal jurisdiction and remain in state court.[5] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction. *See id.* at 290. We think that the familiar "legal certainty" standard best captures the proof the defendant must produce. We are joined in this judgment by the Third Circuit, which recently held in a CAFA case, *Morgan v. Fay*, that "[g]ood faith in this context is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy

---

[5] The irony of the parties' claims vis-a-vis the amount in controversy is not lost on us: The Plaintiff here has diminished or disparaged the amount she is seeking, while the Defendant seeks to augment or aggrandize that amount. A plaintiff may, of course, stipulate to damages in order to avoid federal jurisdiction, or the jurisdiction of particular federal courts. *See United States v. Hohri*, 482 U.S. 64, 66 & n.1 (1987) (damages in a class action suit limited to $10,000 per claim to get into federal district court and avoid claims court). In the context of a putative class action, each side has a profound disincentive to avoid such stipulations. The Plaintiff may undermine her case for serving as class representative by pleading a lesser amount in controversy. By the same token, the Defendant, who is seeking removal, surely would not be willing to stipulate that, if any damages are received at all, the damages must exceed $5,000,000.

exceeds the statutory minimum." 471 F.3d at 474 (internal quotation marks omitted).[6]

By adopting "legal certainty" as the standard of proof, we guard the presumption against federal jurisdiction and preserve the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court. *See St. Paul Mercury*, 303 U.S. at 288-90. Such a standard also maintains symmetry in our rules requiring legal certainty as the standard of proof; for instance, we already require that a defendant seeking remand for a case initially filed in federal court must show with "legal certainty" that the claim is actually for less than the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 401-02 (9th Cir. 1996). Accordingly, we hold that where the

---

[6] The Seventh Circuit's decision in *Brill v. Countrywide Home Loans* is not to the contrary. The court observed that "the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands." 427 F.3d at 449. When the complaint "would justify a judgment exceeding the jurisdictional minimum," the defendant must prove to a "legal certainty" that the damages do not meet the amount in controversy requirement. *Id.* (citing *St Paul Mercury*, 303 U.S. 283). The court then found that when the plaintiff "prefers to be in state court" and the complaint is "silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy," then the "removing litigant must show a reasonable probability that the stakes exceed the minimum." *Id.* As we read the opinion, the Seventh Circuit did not address the question we reserved in *Abrego Abrego*: what happens when the plaintiff filed suit in state court and has clearly pled an amount *less* than the jurisdictional amount.

11

plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.

C

Finally, we must decide whether or not attorneys' fees and costs should be included with damages to reach CAFA's $5,000,000 minimum. In ordinary diversity cases, "when there is no direct legal authority for an attorney's fee, a request for a fee cannot be included in . . . the jurisdictional amount," but "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). We have held that attorneys' fees were properly included in the amount in controversy in a class action. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 942-43 (9th Cir. 2001).

We must look to Oregon law to determine whether attorneys' fees are statutorily authorized in this instance. Plaintiff bases her rounding claim on OR. REV. STAT. § 653.010(11) which defines "work time" as including "both time worked and time of authorized attendance." *Id*. Damages for violation of this provision are set by OR. REV. STAT. § 653.055, which also authorizes the court to

"award reasonable attorney fees to the prevailing party." *Id*. at § 653.055(4). Plaintiff's late payment claim is based on OR. REV. STAT. § 652.140, which governs payment of wages owed upon termination of employment. Employers who violate this provision are liable for *up to* 30 days of penalty wages under OR. REV. STAT. § 652.150, and under certain circumstances, must pay plaintiffs a "reasonable sum for attorney fees" for prevailing in the litigation. OR. REV. STAT. § 652.200(2). Because the relevant Oregon statutes provide for the payment of attorneys' fees, we include the fees in the amount in controversy.

## III

The "legal certainty" standard sets a high bar for the party seeking removal, but it is not insurmountable. In the case at hand, Defendant advances a theory, supported by evidence from its own files, that Plaintiff's claims are worth far more than the $5,000,000 CAFA requires for federal jurisdiction. We address each of Plaintiff's claims separately.

## A

Defendant asserts that Plaintiff's claim for late payment of wages upon termination is worth more than $13,000,000. Under Oregon law, employers may be liable for penalty wages if they fail to tender employees' final paycheck by the "end of the first business day after the discharge or termination." OR. REV. STAT.

13

§ 652.140(1). Penalty wages run from the date when the wage is owed (but not paid) until the date the employer actually pays the wage; recovery is capped at a maximum of 30 days. OR. REV. STAT. § 652.150. Defendant examined company records and determined that 7,571 employees left U.S. Bank's employment during the period specified in the complaint. It then assumed that the bank waited at least 30 days after termination to tender employees their final paycheck, which would entitle each plaintiff to the maximum recovery. OR. REV. ST. § 652.150(1)(a). Its ultimate calculation multiplies the estimated class size (7,571) and number of days of late payment (30) by Oregon's current minimum wage of $7.25/hour and the typical 8-hour work day to yield damages of $13,173,540.

Defendant provides thin support for how it arrived at these numbers. John M. Burnside, a Human Resource employee of U.S. Bank, filed a declaration asserting that 7,571 employees were terminated in Oregon between January 1, 2000 and April 1, 2006. However, he does not specify how many of these employees were hourly employees using the time sheets at issue; only employees thus situated would qualify as class members. The omission is significant. Assuming all other factors are held constant, if the CAFA minimum of 100 former employees qualified as class members, Plaintiff's claim would be worth only $174,000. Under Defendant's assumptions, the class would require 2,874 former

14

employees to break the $5,000,000 statutory minimum. It is likely that some of these 7,571 former employees would qualify for the class, but is far from clear that 2,874 former employees out of 7,751 qualify.

Defendant's numbers are weak for other reasons as well. Defendant assumes that all class members would be entitled to the maximum damages under Oregon law, but provides no evidence to support this assertion. Plaintiff, however, alleges that under Oregon law, she is owed "*up to* 30 days" of penalty wages. Many employees may have been paid only a few days late and, consequently, would be entitled to fewer days of penalty wages. Holding all other factors constant, if all 7,571 potential members of the class were paid only one day late, the aggregate claim would be worth only $439,118. In order to break the $5,000,000 minimum, all members of the class would have to be paid on average twelve days late. We have no evidence to support such a supposition. The problem is only compounded if Defendant is wrong about both the class size and the number of late days. Again, absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy.

B

Defendant did not raise the issue of Plaintiff's rounding claim in its Notice of Removal, but in its appellate brief estimates that the amount in controversy on this claim is well over the $5,000,000 jurisdictional limit. It arrives at this conclusion by assuming that each class member is owed $200 in unpaid wages, a number for which Defendant provides no support.[7] It then assumes that the class consists of 9,300 individuals, which was the number of the class members proposed in another suit pending against U.S. Bank that involves a rounding claim. Finally, out of an abundance of caution, Defendant multiplies the $200 by only half of the 9,300 alleged class members to arrive at its conclusion that the rounding claim is worth $9,300,000.

This assumption is even more poorly supported than Defendant's late wages analysis. Defendant arrives at the potential class size based on a preliminary class

---

[7] In explaining this assumption, Defendant merely drops a perplexing footnote stating that the dollar amount of each class member's rounding claim is $1,740, but then does not use this number when making its calculation of the amount in controversy for this claim. We cannot divine why Defendant inserted this footnote. The calculation arriving at $1,740 appears to be based on the assessment of penalty wages under OR. REV. STAT. § 652.150. If Plaintiff prevails on the rounding claim, the class members would, indeed, be entitled to penalty wages. *See* OR. REV. STAT. § 653.055(1)(b). Yet, if this is true, it is baffling why Defendant would not include the penalty wages along with the $200 it uses in its calculation. Absent any evidentiary support or explanation, we decline to speculate and, for the purposes of this appeal, adopt Defendant's assumption that each class member's rounding claim is worth a total of $200 even though this number is wholly unsupported in its briefing or the record.

list from another case, a class list that had not been vetted or certified. The record contains a letter from Defendant's own firm noting that a cursory examination of the class list–upon which Defendant bases its claim of 9,300 class members–reveals that some people listed as class members were salaried employees or people who did not use the time sheets at issue in the rounding claim. Excerpts of depositions included in the record are also of no help as none of the witnesses could recall how many hourly employees their department employed. Moreover, even if we adopted Defendant's assertion about the class size, the numbers do not add up. Adopting Defendant's assumption that each employee is owed $200 in unpaid wages, Plaintiff would actually need a class of 25,000 employees to break the jurisdictional minimum.[8] If Defendant, who is the only party with access to its employment records cannot more accurately approximate the class size, Plaintiff cannot be expected to plead her case with any more specificity than she did.[9]

---

[8] We note that Defendant makes a serious computational error in its brief. Multiplying 4,650 (half of the 9,300 employees) by $200 yields $930,000 *not* $9,300,000.

[9] Often suits are much smaller than a plaintiff's counsel initially thinks and pleads. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103 (1992) (plaintiff sought $17,000,000 and was awarded $1); *McGrath v. Toys "R" Us, Inc.*, 409 F.3d 513 (2d Cir. 2005) (plaintiffs sought a compensatory award of several hundred thousand dollars and a multi-million dollar punitive award, but the jury only gave each plaintiff $1); *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996)

(continued...)

In short, Defendant has left us to speculate as to the size of the class, the amount of unpaid wages owed due to the rounding policy, and whether or not members of the class qualify for penalty wages; such speculation does meet the "legal certainty" standard. Until the parties are able to more definitively ascertain the potential size of the class or the extent of the damages, we cannot base our jurisdiction on Defendant's speculation and conjecture. Even if we include attorneys' fees in the calculation, Defendant is no closer to carrying its burden because we simply have no basis for estimating the claims of the individual class members. Accordingly, we hold that at this juncture of the litigation, Defendant has failed to prove with legal certainty that the amount in controversy meets CAFA's jurisdictional requirements.

IV

We acknowledge that strict construction of our jurisdiction creates the potential for manipulation of the jurisdictional rules by plaintiffs "who may plead for damages below the jurisdictional amount in state court with the knowledge that

[9](...continued)
(plaintiff sought between $150,000 and $250,000, but was awarded only $17,500); *Valhal Corp. v. Sullivan Assocs, Inc.*, 44 F.3d 195 (3d Cir. 1995) (plaintiff sought $2M in damages, but the jury only awarded $1M).

the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *De Aguilar*, 47 F.3d at 1410. CAFA mitigates some of the potential for abuse by eliminating the one-year removal limitation. *See* 28 U.S.C. § 1453(b) (stating that the one year time limit for removal set forth in § 1446(b) does not apply). Defendant points out, accordingly, that even though a CAFA-qualified case may be removed at a later date, critical decisions related to class certification, discovery, and trial procedures may be made in state court before the case can be removed. Such gamesmanship is possible under our rules, though "[s]uch manipulation is surely characterized as bad faith." *De Aguilar*, 47 F.3d at 1410. Although judicial estoppel may be available should a plaintiff proceed in bad faith, *see Morgan*, 471 F.3d at 477 n.9, there are cases—as the instant case proves—in which the plaintiffs cannot anticipate from the outset the value of their case. They are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum.

Plaintiff's counsel repeatedly stated at oral argument that the sum total of damages plaintiffs are currently seeking–*including* attorneys' fees and costs–does not exceed $5,000,000. Plaintiff might reasonably have claimed more, but absent evidence of bad faith, we are obliged to honor that representation. CAFA's

19

removal provision and the "legal certainty" rule strike a balance, leaving plaintiff as master of her case, but giving defendants an option of a federal forum at the point when they can prove its jurisdiction.

V

We affirm the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

**AFFIRMED**.

## COUNSEL

Timothy R. Volpert, Davis Wright Tremane LLP, Portland, OR, for the petitioners.

Jacqueline L. Koch, Koch & Deering, Portland, OR, for the respondents.