**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1063**

NICHOLAS BARTNIKOWSKI, Individually and on behalf of all persons similarly situated; AIMEE MOORE, Individually and on behalf of all persons similarly situated; AMBER WILCOX, Individually and on behalf of all persons similarly situated,

Plaintiffs – Appellees,

v.

NVR, INCORPORATED,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. James A. Beaty, Jr., Chief District Judge. (1:07-cv-00768-JAB-PTS)

Argued: October 31, 2008          Decided: January 16, 2009

Before WILKINSON and GREGORY, Circuit Judges, and Martin K. REIDINGER, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Reidinger joined. Judge Wilkinson wrote a dissenting opinion.

**ARGUED:** Barry J. Miller, SEYFARTH & SHAW, L.L.P., Boston, Massachusetts, for Appellant. Annette M. Gifford, DOLIN, THOMAS & SOLOMON, L.L.P., Rochester, New York, for Appellees. **ON BRIEF:** Lorie E. Almon, Devjani Mishra, SEYFARTH & SHAW, L.L.P.,

New York, New York; Richard L. Alfred, SEYFARTH & SHAW, L.L.P., Boston, Massachusetts; Keith M. Weddington, Joshua W. Dixon, PARKER POE ADAMS & BERNSTEIN, L.L.P., Charlotte, North Carolina, for Appellant. J. Nelson Thomas, Cristina A. Bahr, DOLIN, THOMAS & SOLOMON, L.L.P., Rochester, New York; Caitlyn Fulghum, THE FULGHUM LAW FIRM, P.L.L.C., Durham, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

In this case, we are asked to determine whether NVR, Inc. ("NVR") -- the defendant below -- has satisfied the amount-in-controversy requirement for federal removal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C.A. § 1332(d)(2) (West 2008). The district court, finding that NVR's estimates of the amount in controversy were too speculative to support removal jurisdiction, granted Appellees' motion for remand. Because we agree with the district court that NVR's estimates rely on a wholly unsupported assumption that members of the plaintiff class will claim to have worked an average of five hours of overtime per week, we affirm the decision to remand to state court.

I.

This litigation began in federal court in the Western District of New York, in the case of Patrick Tracy v. NVR, Inc. (Case No. 04-CV-06541 DGL). NVR is in the business of constructing and selling new homes. Tracy, who worked as a Sales Marketing Representative ("SMR")[1] for NVR, filed a federal

---

[1] SMRs handle lot sales in NVR's newly developed communities. SMRs work from a model home in the community, where they meet with buyers and help them select a design and finish for their new home. NVR then constructs the home for the buyer.

3

Fair Labor and Standards Act ("FLSA") claim against the company, on behalf of a nationwide class of SMRs, for its failure to provide SMRs with overtime compensation. At NVR's request, the Tracy district court dismissed the various state law claims brought by class members, declining to exercise its supplemental jurisdiction over them. To preserve these claims, various Tracy class members then initiated state law actions in their respective state courts.[2]

On September 21, 2007, Plaintiffs-Appellees Nicholas Bartnikowski, Aimee Moore, and Amber Wilcox ("Plaintiffs") filed an amended complaint against NVR in the Superior Court of Durham County, North Carolina. Plaintiffs, present and former North Carolina-based SMRs, claimed that NVR had wrongfully denied them overtime compensation for the hours they worked in excess of forty hours per week. In their complaint, Plaintiffs, individually and on behalf of a class of all current and former

---

[2] In addition to the instant action, state law actions have also been initiated in Ohio (Geers, et al. v. NVR, Inc., Court of Common Pleas, Hamilton County, Docket No. 07-6350 (filed on July 18, 2007)), New Jersey (Gebhardt, et al. v. NVR, Inc., United States District Court for the District of New Jersey, Docket No. 3:07-04456 (filed in Superior Court, Monmouth County on July 18, 2007, then removed on Oct. 11, 2007)), Maryland (Hart, et al. v. NVR, Inc., United States District Court for the District of Maryland, Docket No. 8:07-02744 (filed in the Circuit Court for Montgomery County on July 18, 2007, then removed on Oct. 11, 2007)), and Pennsylvania (Graves, et al. v. NVR, Inc., Court of Common Pleas, Allegheny County, Pennsylvania, Docket No. 07-015569 (filed on July 18, 2007)).

4

SMRs at NVR's North Carolina locations who had not been paid overtime, claimed that NVR's actions constituted a willful violation of North Carolina's wage and hour laws, including N.C. Gen. Stat. § 95-25.6 (2007), as well as a breach of contract. Plaintiffs did not specify damages in their complaint; they simply stated that they "frequently worked over 40 hours in a week" (J.A. 12) and asked for the following relief:

> (a) that all matters so triable be tried by a jury;
>
> (b) an order preliminarily and permanently restraining defendant from engaging [in] the aforementioned pay violations;
>
> (c) an award of the value of plaintiffs' unpaid wages, including fringe benefits;
>
> (d) all relief available under North Carolina law;
>
> (e) [a]n award of reasonable attorneys fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;
>
> (f) [a]n award of pre- and post-judgment interest; and
>
> (g) [s]uch other and further legal or equitable relief as this Court deems to be just and appropriate.

(J.A. 13.)

On October 16, 2007, NVR removed the case to federal district court in the Middle District of North Carolina, pursuant to 28 U.S.C. § 1441(a) (2000), asserting that CAFA, codified in relevant part at 28 U.S.C.A. § 1332(d)(2) (West 2008), gave the district court original jurisdiction over the action. In its notice of removal, NVR alleged that the amount

5

in controversy in the case exceeded $5,000,000, thus satisfying CAFA's jurisdictional requirements. Plaintiffs then filed a motion to remand to state court, questioning NVR's ability to prove the amount in controversy since the Plaintiffs' complaint had left the amount of damages unspecified.

In its response to Plaintiffs' motion, NVR attached a declaration from Dennis Littell, NVR's payroll director. Littell stated in the declaration that the average annual compensation paid to SMRs in North Carolina during the two-year time period relevant to the statutory claims[3] was $145,892, and that North Carolina SMRs worked a total of 1174 "person-months" in those two years. Littell did not define the term "person-months," nor did NVR in its memorandum of law opposing the Plaintiffs' motion to remand.

NVR used Littell's estimates to define an amount-in-controversy in excess of $5,000,000. Based on an average annual

---

[3] NVR has defined this "relevant time period" as being August 2005 to July 2007 because the statute of limitations for North Carolina's unpaid wages statute is two years, see N.C. Gen Stat. § 95-25.22(f) (2007), and Plaintiffs have not disputed this definition. While NVR has also separately suggested that Plaintiffs may seek to recover for a longer period of unpaid overtime (because their complaint suggests that their claims have been tolled since being dismissed by the district court for the Western District of New York), we consider this assertion speculative and decline to consider a recovery period beyond two years in assessing the amount in controversy since NVR has offered no evidence of overtime rates or hours worked during the suggested extended statutory period.

compensation of $145,892, NVR calculated that SMRs in North Carolina had an average hourly wage of $70.14, which would make their average hourly overtime wage $105.21 (or one and a half times their average hourly wage). NVR then assumed that putative class members will claim to have worked an average of 5 overtime hours per week, creating damages of $2,279.37 per person-month.[4] With SMRs working a total of 1174 person-months, NVR estimated damages for the statutory period at about $2,676,000. Assuming then that Plaintiffs will seek statutory double damages under the North Carolina unpaid wages statute, NVR estimated total recovery on the statutory claim at $5,352,000. Using similar calculations, NVR estimated damages under Plaintiffs' breach of contract claim at an additional $963,855. Claiming that attorneys' fees were recoverable on top of these calculations, NVR argued that it easily cleared the $5,000,000 jurisdictional hurdle.

The district court, unconvinced by NVR's estimates, granted Plaintiffs' motion to remand on June 19, 2008. The court found that NVR's calculations were too speculative and that the record was too bare to allow for a reasonable estimate of the amount in

---

[4] $105.21 per hour x 5 hours per week = $526.05 per person-week. $526.05 x 4.333 weeks per month = $2,279.37 per person-month.

controversy.  As such, the court noted, "the propriety of federal jurisdiction remains doubtful."  (J.A. 158.)

NVR filed a petition for leave to appeal pursuant to 28 U.S.C.A. § 1453(c) (West 2008) and Federal Rule of Appellate Procedure 5 on June 30, 2008.  We grant that petition as timely filed[5] and review de novo the district court's order granting Plaintiffs' motion to remand this action to state court.  See Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005).

_____

[5] Section 1453(c)(1) of Title 28 of the United States Code allows an appellate court to accept an appeal from a district court's order granting or denying a motion to remand a class action to state court so long as a petition for appeal is filed "not less than 7 days after entry of the order."  28 U.S.C.A. § 1453(c)(1) (West 2008).  Most circuit courts that have interpreted this statutory provision have concluded that the phrase "not less than 7 days" was a typographical error and that the provision should be read as "not more than 7 days."  See Estate of Pew v. Cardarelli, 527 F.3d 25, 27-28 (2d Cir. 2008); Morgan v. Gay, 466 F.3d 276, 277 (3d Cir. 2006); Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir. 2006); Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc., 435 F.3d 1140, 1145-46 (9th Cir. 2006); Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1093 n.2 (10th Cir. 2005).  At least one circuit, however, has declined to follow this approach.  See Spivey v. Vertrue, Inc., 528 F.3d 982, 983-85 (7th Cir. 2008) (choosing not to read § 1453(c)(1) as requiring petitions for appeal to be filed "not more than" seven days after entry of a remand order but agreeing that petitions filed within seven days should also be accepted rather than dismissed).

Because NVR filed its petition for appeal exactly seven days after entry of the district court's order, excluding weekends, see Morgan, 466 F.3d at 277 n.1, we do not have to decide this question of statutory construction.  Under either reading of the statute, NVR's petition was timely filed.

8

II.

NVR claims that removal under 28 U.S.C. § 1441(a) (2000) is proper because, under CAFA's amendments to 28 U.S.C. § 1332 (2000), the district court has original jurisdiction over this action. CAFA amended Title 28's requirements for diversity jurisdiction and removal in the case of class actions. Section 1332(d)(2) of Title 28 now provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .[6]

To determine whether the jurisdictional minimum is satisfied, the district court looks to the aggregated value of class members' claims. 28 U.S.C.A. § 1332(d)(6) (West 2008).

Defendants seeking removal bear the burden of demonstrating that jurisdiction is proper. See Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296-97 (4th Cir. 2008). This is true even in the context of removals pursuant to CAFA. In Strawn, this Court found that, while CAFA was intended to open the doors of the federal courts to class action litigants, its statutory language

---

[6] Section 1332(d)(5)(B) further limits federal courts' original jurisdiction under CAFA to those class actions where the class size is greater than or equal to 100 members.

9

did nothing to reverse the long-settled principle that a defendant seeking to invoke a federal court's removal jurisdiction bears the burden of demonstrating that jurisdiction would be proper.  Id. at 297.

The question then becomes how that burden is to be satisfied.  Generally, the amount specified in the complaint will determine whether the jurisdictional amount is satisfied for purposes of removal.  See Wiggins v. North Am. Equitable Life Assurance Co., 644 F.2d 1014, 1016 (4th Cir. 1981).  Determining the amount in controversy becomes more difficult, however, where, as here, Plaintiffs have left damages unspecified in their complaint.  In this case, both parties agree that the defendant's burden in these circumstances is to establish the jurisdictional amount by a preponderance of the evidence.[7]  We review the evidence as to the amount in controversy with that standard in mind.

---

[7] A number of our sister circuits have explicitly adopted a preponderance of the evidence standard as the appropriate burden to which removing defendants should be held in proving the amount in controversy where plaintiffs leave damages unspecified.  See, e.g., Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 404-05 (6th Cir. 2007); Miedema v. Maytag Corp., 450 F.3d 1322, 1330 (11th Cir. 2006); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683 (9th Cir. 2006) (per curiam); Garcia v. Koch Oil Co. of Tex. Inc., 351 F.3d 636, 638-39 (5th Cir. 2003); McCord v. Minn. Mut. Life Ins. Co. (In re Minn. Mut. Life Ins. Co. Sales Practices Litig.), 346 F.3d 830, 834 (8th Cir. 2003).  This case does not require us to decide whether a more stringent standard would be appropriate since we (Continued)

10

III.

In considering Plaintiffs' motion for remand, the district court seemed to find virtually all of NVR's calculations too speculative and unsupported to satisfy its burden.  We do not agree fully.  A number of NVR's assumptions and calculations are reasonable and supported by the record.

For example, NVR assumes that the base amount of overtime compensation allegedly due under North Carolina's unpaid wages statute -- $2,676,000, according to NVR's calculations -- can be doubled to determine the amount in controversy because the North Carolina statute authorizes double damages.  Plaintiffs' complaint does not make any specific claim for liquidated damages but it does ask for "all relief available under North Carolina law."  (J.A. 13.)  Section 95-25.22(a1) of the North Carolina General Statutes authorizes an award of liquidated damages "in an amount equal to the amount found to be due" in unpaid wages cases, subject only to a good faith defense.  Given that the complaint alleges that NVR "willfully violated its obligations under North Carolina Law" (J.A. 13 (emphasis added)), it appears likely that liquidated damages will be

find that NVR has failed to meet even a preponderance of the evidence burden.  See Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001).

11

sought. Cf. Morgan v. Gay, 471 F.3d 469, 475 (3d Cir. 2006) (finding punitive damages not properly includable in amount-in-controversy calculation where defendants conclusorily alleged that millions of dollars in punitive damages would be sought and where plaintiffs had specifically claimed that damages would not exceed $5 million). Statutory liquidated damages are properly includable in the calculation of the jurisdictional amount here, and we do not consider them too speculative in this case to be factored into that calculation. See 28 U.S.C.A. § 1332(d)(2) (West 2008) (excluding only "interest and costs" from calculation of aggregate amount in controversy); see also Wall v. Fruehauf Trailer Servs., Inc., 123 F. App'x 572, 577 (4th Cir. 2005).

NVR also argues that the "average annual compensation" and average number of "person-months" worked, as provided in the Littell declaration, are adequate measures from which the amount in controversy can fairly be calculated. Plaintiffs themselves have proffered no information about their expected damages, nor have they explained why accepting the declaration of NVR's Payroll Director as to average annual SMR compensation would be speculative or an improper means of estimating SMRs' average hourly wage and expected hourly overtime rate. We have no difficulty accepting these figures.

12

The use of the "person-months" statistic is more troublesome since NVR left the term undefined in its brief before the district court. However, NVR has made clear in its brief to this Court that a "person-month" is the monthly equivalent of a "man-hour," meaning a unit of one month's work by one person. According to the Littell declaration, SMRs in North Carolina collectively worked a total of 1174 person months during the statutory period of two years.[8] Multiplying this number of months by the expected monthly amount of overtime pay due to employees (if this number was discernible) would yield a reasonable estimate of the amount of unpaid wages at stake under the statutory claims in this case.

NVR's ultimate estimate of the amount in controversy, however, is fatally undermined by the wholly unsupported assumption on which its calculations ultimately rest -- that Plaintiffs and class members will each claim to have worked an average of five hours of overtime per week. NVR concedes that it has kept no records of the number of overtime hours worked by

---

[8] The district court correctly points out that dividing 1174 by 24 months gives us approximately 49 as the average number of SMRs working per month during the statutory period, which is far short of the class-size minimum of 100 persons. See supra note 6. But, neither party contests that the 100-member class requirement has been met. Moreover, a turnover rate of about two SMRs per month would suffice to double the class.

class members,[9] and the Plaintiffs themselves have offered no evidence on the issue either. The only evidence in the record to which NVR can point for support is an affirmation from Patrick Tracy, the named plaintiff in the FLSA action being litigated in district court in New York.[10] Tracy, a New York-based SMR, made vague references in his affirmation to working 55-hour weeks. According to NVR, this shows that its assumption of five hours of overtime is, if anything, a conservative estimate, since Tracy, who is supposed to be representative of a nationwide class of SMRS including Plaintiffs, suggests that he works fifteen hours of overtime per week. There are two significant problems with this argument.

First, Tracy is located in New York. While it is true that Plaintiffs are members of the Tracy class, Tracy is a completely separate action. Tracy's "representativeness" of the nationwide class in the federal FLSA action does not make him, a New York-

---

[9] According to NVR, it did not see any need to maintain such records because it understood that the SMR position was exempt from overtime pay.

[10] It is worth noting that the Tracy affirmation was not even a part of the record when, on December 10, 2007, NVR filed its brief in opposition to Plaintiffs' motion for remand, in which it first articulated the "five hours per week" assumption. The affirmation was only filed with the district court for the Western District of New York on December 12, and NVR then submitted a motion for leave to submit it as "additional" evidentiary support on December 14.

14

based SMR, representative of a class of North Carolina-based SMRs bringing state law claims. Second, even if Tracy could be considered representative of the class in this case, his affirmation does not actually state that he worked an average of 55 hours per work week. Instead, it states as follows:

> Thus, visiting two lots, in one month, equates to 40 minutes a month. If working four 55-hour weeks in a month (or 220 hours = 13,200 minutes in a month) my lot visits outside the model took less than 1% of the time. Even if I had worked only 40 hours a week (equating to 160 hours per month = 9600 minutes), such visits still took less than 1% of my time in a month.

(J.A. 96 (emphasis added).) The statement was made in the context of explaining what percentage of time Tracy spent on lot visits away from the model home in a given month. Tracy was not giving an estimate of the number of overtime hours he worked per week.

Tracy's affirmation is the only piece of evidence NVR offers to anchor its assumption that plaintiff class members worked an average of five overtime hours per week, making the assumption highly speculative. Cf. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005) ("Thus part of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands.") (emphasis in original).

On top of Plaintiffs' statutory claims, they have also raised a breach of contract claim for their unpaid overtime.

15

According to NVR, the statute of limitations on Plaintiffs'

contract claim is three years, giving them one additional year

for which they can recover. Using a similar calculation to that

used for the statutory claim, NVR estimates that the contract

claim puts an additional $963,855 at stake.[11] But this estimate

relies on the same unsupported "five hours of overtime per week"

assumption.[12]

---

[11] The average annual compensation for SMRs in North Carolina from August 2004 to July 2005 was $127,742, yielding a regularly hourly rate of $61.41 and an overtime rate of $92.11. Assuming class members averaged five hours of overtime per week, NVR estimates that Plaintiffs' damages would be $1,995.56 per month. SMRs worked 483 person-months during the relevant time period, thus total damages available under the contract claim would be $963,855.48.

[12] NVR also suggests that attorneys' fees are properly includable in the calculation of the amount in controversy since North Carolina's unpaid wages statute authorizes their award. See N.C. Gen. Stat. § 95-25.22(d) (2007). CAFA specifies that the amount in controversy should be calculated "exclusive of interests and costs." 28 U.S.C.A. § 1332(d)(2) (West 2008). However, since the North Carolina statute provides for the recovery of attorneys' fees as a substantive right, they are properly includable in the amount in controversy estimate. See Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933). At this stage of litigation, however, an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation.

Similarly, NVR suggests in passing that since "Plaintiffs' complaint includes a demand for injunctive relief, the value of that injunction is included in the calculation of the relief." (Appellant's Br. at 9 n.11.) Neither party has attempted to give us any estimate of the value of the injunctive relief sought, and thus we will not consider it in assessing the amount in controversy.

The "five hours of overtime" assumption is in fact quite crucial to NVR's calculations of the amount in controversy. If the actual amount of overtime claimed was only one to three hours per week, NVR, using its own calculation methods, could not satisfy the jurisdictional minimum.[13] At four hours, NVR would clear the jurisdictional hurdle only by a hair.[14] Given the centrality of the "five hours" number to NVR's claims, we cannot simply take NVR's word that this is really a "conservative" estimate (Appellant's Br. 12) of the overtime hours that will be claimed by Plaintiffs.

The dissent contends that NVR has carried its burden of proof by presenting credible evidence on the "five hours" issue, and that therefore the burden of production should shift to Plaintiffs to show that the jurisdictional amount has not been

---

[13] Assuming the class averaged only one hour of overtime per week, the amount in controversy on the statutory claims would be $105.21 per hour x 1 hours per week x 4.333 weeks per month x 1,174 person-months x 2 = $1,070,394.34. The amount in controversy on the contract claim would be $92.11 per hour x 1 hour per week x 4.333 weeks per month x 483 person-months = $192,771.40. The total amount in controversy then is $1,263,165.74. At two hours, the total becomes $2,526,331.47 ($2,140,788.67 in statutory damages + $385,542.80 in contract damages). At three hours, the total becomes $3,789,497.21 ($3,211,183.01 in statutory damages + $578,314.20 in contract damages).

[14] At four hours, the total becomes $5,052,662.94 ($4,281,577.34 in statutory damages + $771,085.60 in contract damages).

17

satisfied. But NVR has put forth no evidence of its own to support the number; rather, it has presented only a conjectural argument. Plaintiffs have no burden in these circumstances and are under no obligation to put forth any evidence. See Birkenbuel v. M.C.C. Constr. Corp., 962 F. Supp. 1305, 1306 (D. Mont. 1997) ("MCC complains that 'Birkenbuel offers no evidence regarding the amount of his interim earnings, or indeed any evidence that he has or ever will earn interim income.' However, it is MCC, not Birkenbuel, which has the burden of proof."). Even if, as NVR contends, Plaintiffs are the "sole custodians" of information about the amount of overtime they worked (Appellant's Reply Br. at 13), this does not give NVR license to pull numbers from thin air in determining the amount in controversy. See Morgan, 471 F.3d at 474 ("CAFA does not change the proposition that the plaintiff is the master of her own claim"); Brill, 427 F.3d at 449 (noting that "a removing defendant can't make the plaintiff's claim for him"). Because NVR has presented no credible evidence to support the "five hours" assumption, NVR simply cannot satisfy its burden of demonstrating that jurisdiction would be proper.

We note that this case is readily distinguishable from that of Strawn, 530 F.3d 293, where this Court reversed the district court's grant of a motion to remand. Indeed, this case is much

18

more reminiscent of the facts of the Eleventh Circuit case Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006).

In Strawn, the plaintiffs claimed that AT&T had illegally used an opt-out policy for its "Roadside Assistance" program, under which it charged its West Virginia cellular customers $2.99 per month automatically unless they affirmatively asked to be removed from the program after an initial free-trial period. 530 F.3d at 294. In its notice of removal, AT&T included an affidavit stating the following to show the jurisdictional amount had been satisfied: (1) that approximately 58,800 consumers in West Virginia were automatically enrolled in the Roadside Assistance program after the trial period, and (2) that under the West Virginia Consumer Credit and Protection Act, the minimum statutory damages per person were $200. Id. at 295. Because plaintiffs offered no evidence to suggest that the 58,800-customer figure was inaccurate, this Court found that AT&T had met its burden. Id. at 299.

Likewise, we can accept NVR's evidence on average annual compensation and the number of person-months worked by SMRs during the statutory period because Plaintiffs have offered no contradictory evidence. But its "five hours of overtime per week" estimate is not evidence; it is an assumption. It is nothing like the affidavit produced by AT&T showing that 58,800 customers had been automatically enrolled in the roadside

19

assistance program. Nor is it even an assumption that finds some support in the record; at this point, it seems the "five hours of overtime per week" was nothing more than the result of some strategic guesswork on NVR's part, and Plaintiffs are under no obligation to rebut this bare assertion.

NVR's calculations are more like the ones rejected as being too speculative in Miedema. In that case, the named plaintiff filed a class action involving negligence, breach of express warranty, and state statutory claims against Maytag for a defect found in the motorized door latch of its ranges/ovens sold in Florida. Miedema, 450 F.3d at 1324-25. Maytag then removed to federal court. Id. at 1325. Affirming the district court's grant of a motion to remand, the Eleventh Circuit found that Maytag had failed to establish the amount in controversy required under CAFA by a preponderance of the evidence. Id. at 1331. Maytag's notice of removal had included an affidavit of one of its information analysts that stated that a total of 6,279 ranges/ovens had been sold in Florida, with a total value of $5,931,971. Id. at 1325. However the 6,279 figure was not based on actual sales data, but was merely a guess extrapolated from the fact that Maytag had received a total of 2,493 product registrations from Florida consumers. Id. at 1332. The court found that "great uncertainty" remained about the amount in

20

controversy and that such uncertainty needed to be resolved in favor of remand. Id. (internal quotations omitted).

NVR's "five hours of overtime a week" assumption is even more speculative than Maytag's extrapolations in Miedema. In Miedema, Maytag at least had data on the number of product registrations in Florida and an estimate of nationwide registration rates to anchor its estimate of the number of units sold. Here, by contrast, NVR's estimate of overtime hours is pure guesswork, and leaves significant uncertainty about the actual amount in controversy.

While NVR suggests that CAFA mandates that we resolve any such uncertainties in favor of federal jurisdiction, the long-standing tradition of strictly construing removal jurisdiction suggests otherwise. See, e.g., Strawn, 530 F.3d at 297 (rejecting the argument that CAFA's legislative history demonstrates that the statute intended to flip the presumption that doubts about jurisdiction are resolved in favor of remand to state court); Miedema, 450 F.3d at 1328-29 (same).

We reach our decision to affirm the district court not unmindful of the difficulty that CAFA defendants face in demonstrating that the amount in controversy is met when plaintiffs have left their damages unspecified. Plaintiffs may well use their pleadings in state court tactically, leaving damages unspecified to block removal without foreclosing an

21

ultimate recovery of more than the federal jurisdictional minimum. See Lowdermilk v. U.S. Bank Nat'l Assoc., 479 F.3d 994, 1002 (9th Cir. 2007). We are reassured, however, by the fact that a CAFA defendant who cannot meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, as Congress has eliminated the one-year time limit on CAFA removal actions.[15] See 28 U.S.C.A. § 1453(b) (West 2008); Lowdermilk, 479 F.3d at 1002-03.

NVR argues that it is contrary to the purpose of CAFA to subject defendants to this kind of "wait and see" approach in state court. But CAFA is quite explicit about how it relaxes the jurisdictional requirements for bringing a class action in federal court. To the extent that Congress sought to relax a CAFA defendant's burden for removal, it has done so explicitly. See, e.g., 28 U.S.C.A. § 453(b) (West 2008). Where Congress has not spoken directly to the issue, we must fall back on our long-standing view that, because federal courts are courts of limited subject matter jurisdiction, our removal jurisdiction must be strictly construed. See Md. Stadium Auth. v. Ellerbe Becket

---

[15] Although CAFA eliminates the one-year time limit on removal actions, a defendant must still file a notice of removal "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (2000); see also 28 U.S.C.A. § 1453(b) (West 2008).

Inc., 407 F.3d 255, 260 (4th Cir. 2005) ("We are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated.") (internal citation and quotations omitted). Where federal jurisdiction is doubtful, a remand to state court has traditionally been considered the proper course of action. Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). This is no less true in the context of CAFA than in other removal actions. See Strawn, 530 F.3d at 297; Miedema, 450 F.3d at 1328-29.

IV.

On the record as it stands, we find that NVR has not satisfied its burden of showing that the amount in controversy is sufficient to meet CAFA's jurisdictional requirements. As such, we affirm the order of the district court remanding this case to state court.[16]

AFFIRMED

---

[16] Plaintiffs have also filed a motion to strike certain documents from the joint appendix, and we deny this motion as moot.

WILKINSON, Circuit Judge, dissenting:

Petitioner put forth a prima facie case establishing that the damages at issue in this action meet the jurisdictional threshold under the CAFA. In response, respondent offered nothing to rebut petitioner's claims; it merely charged that the claims are too speculative. In accepting this argument, the majority conflates burdens of proof with burdens of production. Moreover, the majority's holding – that petitioner has failed to meet its burden of proof despite presenting a prima facie case that respondent has not contradicted – is in some tension with circuit precedent in Strawn v. AT&T Mobility LLC, 530 F.3d 293 (4th Cir. 2008). I therefore respectfully dissent.

I.

The party seeking removal in a CAFA case has the burden of alleging federal jurisdiction and establishing it if challenged. Strawn, 530 F.3d at 298. But once petitioner has set forth a prima facie case establishing jurisdiction, the onus is on respondent to offer something of its own. See id. at 298-99. Strawn held that the petitioner in that case had met its burden by identifying the number of class members (based on the terms of the respondent's complaint) and by calculating the minimum statutory damages due each member of the class, where the respondent "offered nothing to suggest that the [figure put

24

forth by the petitioner] is not an accurate number." Id. The court thus held for the petitioner based on the petitioner's calculations and the facts presented in the complaint, even though respondent's counsel even went so far as to stipulate that they would not accept an award over $5 million. See id. at 295, 299.

The case before us is strikingly similar. NVR, the petitioner here, met its initial burden by offering a prima facie case based on the terms of respondents' complaint and petitioner's own calculations of overtime pay. In the complaint, the class action plaintiffs (respondents here) raised a statutory claim for overtime pay that had a statute of limitations period of two years. They also asserted a breach of contract claim that reached back three years. Both claims sought overtime pay of one-and-a-half times the regular rate of pay; further, the statutory claim asserts that petitioner acted willfully, which under North Carolina law would allow a court to award double damages. See 28 U.S.C. § 1332(d)(2) (excluding only "interest and costs" from the amount in controversy under the CAFA); N.C. Gen. Stat. §§ 95-25.22(a1) (providing for the award of liquidated damages in an amount equal to the damages due). Finally, respondents claim attorneys' fees, which are recoverable under North Carolina wage and hour laws. See N.C. Gen. Stat. § 95-25.22(d); see also 28 U.S.C. § 1332(d)(2).

25

Based on these claims, petitioner estimates that respondents will seek damages of $5,352,000 on the statutory claim alone, and that the total amount of damages could exceed $6 million even without attorneys' fees.

To support its calculations, petitioner submitted a declaration from its payroll director, Dennis Littell. Mr. Littell reviewed the payroll records of the relevant category of employees, Sales and Marketing Representatives, for two time periods: August 2004 to July 2005 (for the breach of contract claim), and August 2005 to July 2007 (for the statutory claim). Based on this review, Mr. Littell computed the average annual compensation paid to the employees and the number of person-months worked during each time period. NVR then looked at respondents' claims in this and other proceedings and estimated that respondents would claim they had worked an average of five overtime hours per week. This figure yielded petitioner's estimates of respondents' total damages.

The majority does not suggest that someone other than the payroll director would be better fit to put forth this information. It does not suggest what information petitioner could offer that would meet its burden under the CAFA. Although petitioner bears the ultimate burden of proving by a preponderance of the evidence that the jurisdictional amount is in controversy, it need not produce reams of personnel records

26

simply to present a prima facie case. To require more would lead to voluminous discovery requests and document production at the preliminary stages of what is itself a preliminary jurisdictional issue. Encouraging this sort of deluge adds more litigiousness to already litigious class action undertakings.

Moreover, the five-hour estimate is not so speculative as to not even require a response from respondents. The affirmation of Patrick Tracy, the named plaintiff in a parallel proceeding in the Western District of New York, states that "in many weeks [Tracy] worked beyond the model home open hours on [his] scheduled days" and that he also came to work on his days off. (JA 99.) He not only refers to working four 55-hour weeks in a month (JA 96), but states that he "frequently worked over forty hours in a week" because of his extra hours during the week and "the extra hours" on his days off. (JA 100) Therefore, Tracy's statements buttress the petitioner's argument that an estimate of five hours per week is not only a credible estimate, but a very conservative one. And there is no reason to believe that Tracy's experience in New York differs from that of SMRs in North Carolina: the named plaintiffs in the North Carolina action are part of the class that Tracy represents, and respondents have stated that NVR kept "very regimented policies" and followed the same sales model "at all of its locations." Pl's Mem. of Law in Support of Mot. for Class Certification,

27

<u>Tracy v. NVR, Inc.</u>, No. 04-CV-06541 (W.D.N.Y. filed on Jan. 11, 2008).

Finally, the majority acknowledges that respondents would reach the jurisdictional amount if they claimed just four hours per week of overtime. Maj. Op. at 17. Four hours overtime per week is precious little to seek in a class action suit brought to recover overtime pay. And petitioners can reach this jurisdictional threshold without counting attorneys' fees and the value of injunctive relief, which the majority notes constitute part of the amount in controversy. <u>See</u> Maj. Op. at 16, n.12.

These calculations, along with the Littell Declaration, make up petitioner's prima facie case and put a burden on the respondents to offer something in response. <u>See</u> <u>Strawn</u>, 530 F.3d at 299. If the five-hour estimate was indeed too speculative or inaccurate, it would make the response even easier to tender. The respondents, who are in possession of all information regarding their pay claims, could shoot down an inaccurate estimate without breaking a sweat. But then respondents have never claimed that they are requesting less than $5 million in damages. In fact, respondents have been litigating class action overtime pay cases against petitioner since 2004, but have passed on every opportunity to submit an affidavit or even make a declaration as to the likely amount of

28

damages they will claim. See, e.g., Tracy v. NVR, Inc., No. 6:04-06541 (W.D.N.Y. filed on Oct. 29, 2004). To be sure, respondents may be under no obligation to do so, but the court is likewise under no obligation to relieve them of the consequences of inaction.

Requiring some sort of minimal response in no way shifts the ultimate burden of proof to respondents, but recognizes that respondents have some modest role to play in making the adversary process function. In ruling otherwise, the majority confuses the burden of proof with the burden of production when it states that respondents "are under no obligation to put forth any evidence." Maj. Op. at 18. Our cases in the Title VII context are instructive. As we noted when discussing the McDonnell Douglas framework in Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996), the burden of proof throughout a Title VII proceeding remains with the plaintiff. But once the plaintiff puts forth a prima facie case of discrimination, the burden of production shifts to the defendant to show a nondiscriminatory motive for its actions. Burns, 96 F.3d at 731-32.

Similarly, in the CAFA context, the burden of proof remains with the party seeking to invoke federal jurisdiction – typically, the class action defendant (petitioner here). See Strawn, 530 F.3d at 297-98. But once petitioner has put forth

credible evidence on the jurisdictional question, the burden of production shifts to the respondent to offer something in response.  E.g., Strawn, 530 F.3d at 298-99.  Thus, the burden of production may switch without diminishing or reallocating in any way the burden of proof.  The majority seems to recognize this burden-shifting when it notes that it "accept[s] NVR's evidence on average annual compensation and the number of person-months worked . . . because [respondents] have offered no contradictory evidence."  Maj. Op. at 19.

Finally, not requiring any response from respondents lets them have their cake and eat it too – avoiding federal jurisdiction without being bound by any declaration of damages that might haunt them in state court.  See, e.g., Morgan v. Gay, 471 F.3d 469, 477 (3d Cir. 2006) ("[P]laintiffs in state court should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement.").  Further, not requiring even so much as a response invites a game of judicial ping-pong.  At this point, the case will proceed with discovery in state court, but petitioner will surely renew its notice of removal if respondents later claim, as no doubt they will, over $5 million in damages.  See 28 U.S.C. § 1446(b) (stating that the defendant may remove a case from state court by filing a notice of removal within 30 days of receiving an amended

30

pleading or other document indicating that federal jurisdiction is proper); see also 28 U.S.C. § 1453(b) (noting that the one-year limitation on removals under § 1446 does not apply to class actions). The parties will then be litigating this case once again in federal court.

I recognize that CAFA cases may turn on questions of state law and there is a policy argument, with which I have some sympathy, for having these cases resolved at the state level. But we are not at liberty to assign cases to forums where we, not Congress, think they belong. Congress has enacted CAFA and no one is claiming that CAFA is beyond the congressional power to establish the jurisdiction of the federal courts. Here, petitioner offered a prima facie case for federal jurisdiction and respondents offered absolutely nothing in response. Strawn does not permit this very situation, and it gives rise to gaming the system. I would reverse the judgment and let the case proceed in district court.